**In re Michael Clark CAMERON,
Debtor.**

No. 02–6110–8G7.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 26, 2003.

Andrew S. Forman, Andrew S. Forman,
P.A., Tampa, FL, for Debtor.

Catherine Peek McEwen, Catherine Peek McEwen, P.A., Tampa, FL, for Creditors, First American Holdings, Inc., and The First American Investment Banking Corporation.

### ORDER ON MOTION TO RESCHEDULE 341 CREDITORS MEETING AND TO RESET NECESSARY DEADLINES

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider the Motion to Reschedule 341 Creditors Meeting and to Reset Necessary Deadlines filed by the Debtor, Michael Clark Cameron.

The issue in this case is whether the section 341 meeting of creditors should be rescheduled and the deadline to file dischargeability complaints should be reopened, where the Debtor did not file his Schedule of creditors until after the Notice of the deadline had been served by the Clerk's office.

#### Background

The Debtor filed a petition under chapter 7 of the Bankruptcy Code on April 1, 2002. On that date, the Debtor filed the petition, a Disclosure of Compensation of Attorney for Debtor, and a mailing list that included only the Debtor, the Debtor's attorney, and the office of the United States Trustee.

On April 3, 2002, the Clerk of the Bankruptcy Court issued a Notice of Incomplete and/or Deficient Filing. (Doc. 2). The Notice required the Debtor to file his Summary of Schedules, Schedules, and Statement of Affairs within fifteen days of the date that the petition was filed, and to file his Statement of Intention within thirty days of the date that the petition was filed.

On April 8, 2002, the Clerk of the Bankruptcy Court issued its "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, and Deadlines." (Doc. 3). Pursuant to the Notice, the § 341 meeting of creditors was scheduled for May 2, 2002. Additionally, July 1, 2002, was established as the deadline for filing a Complaint objecting to the Debtor's discharge or objecting to the dischargeability of certain debts. The Notice was served on the Debtor, the Debtor's attorney, the Chapter 7 Trustee, and the United States Trustee.

On April 25, 2002, ten days after they were due, and seventeen days after the Clerk issued the Notice of Chapter 7 Bankruptcy Case, the Debtor filed his Schedule of Assets and Liabilities and Statement of Affairs. (Doc. 4). Six creditors were listed on the Debtor's "Schedule F—Creditors Holding Unsecured Nonpriority Claims." The scheduled unsecured creditors included a creditor identified as First American Holding, Inc. In conjunction with his Schedules, the Debtor also filed a "Verification of Creditor Matrix." The "creditor matrix" attached to the Verification included First American Holding, Inc. at its business address, and also included a mailing address for the attorney who represented First American Holding.

The record does not include any certificate or proof, either from the Clerk of the Bankruptcy Court or from the Debtor, that the creditors listed on the Debtor's Schedules were served with notice of the pending bankruptcy case and deadlines.

The section 341 meeting of creditors was concluded on May 2, 2002. The Debtor and his counsel appeared at the meeting.

The case is a "no asset" case, and no bar date has been set for filing proofs of claim.

On September 5, 2002, more than two months after the expiration of the deadline set forth in the Notice, First American Holdings, Inc. filed a Complaint to Determine the Dischargeability of a Debt pursu-

ant to § 523(a)(3)(B) and § 523(c) of the Bankruptcy Code.

On November 4, 2002, the Debtor filed the Motion to Reschedule 341 Creditors Meeting and to Reset Necessary Deadlines that is currently under consideration. The Debtor asserts that after he filed his schedule of creditors on April 25, 2002, "the Clerk's office unfortunately did not Notice the listed creditors on the Matrix. Therefore, none of the creditors in the aforementioned bankruptcy case have received proper Notice of the Debtor's intention to file bankruptcy." The Debtor therefore requests that the Court reschedule the creditors' meeting and re-set the deadline for creditors to file complaints objecting to the Debtor's discharge or to the dischargeability of a particular debt.

All creditors that were scheduled were served with the motion under consideration, and all were served with notice of the hearing on the motion. No responses or objections to the motion were filed. The only creditor that appeared at the hearing was First American Holdings, Inc., that opposed the motion.

### Discussion

■ Rule 1007(a)(1) of the Federal Rules of Bankruptcy Procedure provides that a debtor shall file with the petition a list containing the name and address of each creditor, unless the petition is accompanied by a schedule of liabilities. Rule 1007(c), Fed. R. Bankr.P., provides that the schedules shall be filed within 15 days after the petition if the petition is accompanied by a list of all the debtor's creditors and their addresses. Clearly, the Debtor did not comply with these requirements. Ten days after the schedules were due, however, and before the section 341 meeting of creditors, the Debtor filed the schedules. The schedules listed First American Holding, Inc. as a creditor and also listed the name and address of the attorney for First American Holding, Inc.

In September, 2002, First American Holdings, Inc. (First American) filed an adversary proceeding alleging that the debt to it was not dischargeable because the debt was not listed or scheduled in time to permit the timely filing of a proof of claim and the timely request for a determination of dischargeability under § 523(a)(2), (4), or (6).

The Debtor moved to dismiss the adversary proceeding on the basis that First American had been scheduled and had received notice of the creditors' meeting. The motion to dismiss was denied.

Apparently upon learning that the scheduled creditors did not receive notice of the creditors' meeting and the related deadlines, the Debtor filed this motion to reschedule the creditors' meeting and to reset the related deadlines. Essentially, the Debtor asks the Court to put all interested parties in the positions they would have been in if notice of the creditors' meeting and related deadlines had been given.

First American opposes the motion on the basis that it is inappropriate, citing *In re Reese*, 133 B.R. 245 (Bankr.M.D.Fla. 1991) and *In re Stone*, 273 B.R. 680 (Bankr.M.D.Fla.2002). These opinions are instructive and well written, but both deal with issues involved with reopening cases well after the cases had been administered and discharges had been entered. In both cases the creditors had lost the ability to participate in the administration of the estate, lost the right to examine the debtor at the meeting of creditors, lost the right to conduct in-depth investigations of the affairs of the debtors, lost the right to challenge the debtor's claims of exemption, lost the ability to file complaints under 523(c), and lost the right to challenge the debtors' entitlement to a general bank-

ruptcy discharge. See *In re Reese*, 133 B.R. at 247.

In this case, however, the Debtor's discharge has not been entered, and the Debtor's request proposes to provide all of these rights to the creditors. No prejudice will result to creditors from the standpoint of case administration.

■ First American also argues that it might be prejudiced if the motion is granted because the requirements of proof to show that the debt to it is not dischargeable may change. In its current complaint brought under 523(a)(3)(B), First American must prove that the debt owed to it is of a kind specified in 523(a)(2), (4), or (6), and that it was not listed or scheduled in time to permit the timely request for a determination of the dischargeability of such debt. If the Debtor's motion is granted, First American will need to prove that the debt is excepted from discharge under § 523(a)(2), (4), or (6). First American argues that the degree of proof required to show that a debt is "of a kind specified in" § 523(a)(2) may be less than the degree of proof required to show that a debt is excepted from discharge under 523(a)(2). This distinction is considered in *Haga v. National Union Fire Insurance Company of Pittsburgh, Pa. (In re Haga)*, 131 B.R. 320 (Bankr.W.D.Tx.1991). ("Courts have imposed results using the entire scope of positions available concern-

ing the extent to which the underlying § 523(a)(2), (4), or (6) claim must be proven when bringing a complaint under § 523(a)(3)(B). Results range from requiring only proof that the creditor was not scheduled to requiring a full trial on the merits of the underlying dischargeability claim.") Although the Court in *Haga* concluded that the burden of proof on the creditor under § 523(a)(3)(B) was only to prove that it has "a colorable/viable claim of nondischargeability" under § 523(a)(2), (4), or (6), the Court did not rely on that conclusion to hold the debt nondischargeable, because it determined that the creditor did not meet even this reduced burden.

■ Few cases discuss this difference. The Court concludes that § 523(a)(3)(B) preserves for certain omitted creditors the right to litigate the dischargeability of a debt under § 523(a)(2), (4), or (6) after the expiration of the period within which scheduled creditors must file complaints. Additionally, § 523(a)(3)(B) expands for certain omitted creditors the rights provided under § 523(c) to scheduled creditors, because it allows such litigation to be brought in forums other than the Bankruptcy Courts.[1] However, § 523(a)(3)(B) does not reduce the burden of proof required to establish that a debt is of a kind that would be excepted from discharge under § 523(a)(2), (4), or (6).[2] The Court reaches this conclusion for several reasons.

1. "In short, the penalty to the debtor for failing to schedule a fraud debt or otherwise to inform the creditor of the bankruptcy is forfeiture of the right to enjoy exclusive federal jurisdiction and the loss of the sixty-day limitations period applicable in the exclusive jurisdiction actions." *Fidelity National Title Insurance Company v. Franklin, et al. (In re Franklin)*, 179 B.R. 913, 924 (Bankr.E.D.Cal. 1995).

2. "Because Fidelity was unscheduled, unlisted, and unaware of the bankruptcy, its section 523(a)(2) cause of action is transmuted into a

section 523(a)(3)(B) action. That transmutation makes very little difference as to the applicable substantive law or as to proof at trial, but makes all the difference for purposes of jurisdiction and of the limitations period. In a section 523(a)(3)(B) action, the plaintiff must prove all the elements of nondischargeability under section 523(a)(2), (a)(4), or (a)(6) and, in addition, must prove that the debt was unscheduled, unlisted, and the plaintiff was unaware of the bankruptcy in time to comply with the section 523(c) sixty-day deadline." *Id.*

1. Section 523(c), the section that requires a creditor to bring an action under § 523(a)(2), (4), (6), or (15), provides that a debtor is discharged from a debt "of a kind specified in" § 523(a)(2), (4), (6), or (15) unless, on request of the creditor, the court determines "such debt" to be excepted from discharge. The description in § 523(c) of the debt as being "of a kind specified in" § 523(a)(2), (4), (6), or (15) parallels the description in § 523(a)(3)(B) of the debt as being "of a kind specified in" § 523(a)(2), (4), or (6). Therefore, there is no reason to focus on the phrase "of a kind" to conclude that the requirements of proof for one section are different than for the other.

2. Exceptions to the discharge of debts are construed strictly in favor of debtors. "Because of the very nature and philosophy of the Bankruptcy law the exceptions to dischargeability are to be construed strictly, *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915), and the burden is on the creditor to prove the exception." *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir. 1986).

3. Considering this section of the Bankruptcy Code under different circumstances, the Eleventh Circuit Court of Appeals states that: "We accept, as the Seventh Circuit does, that under the new law [the Bankruptcy Code] the old prophylactic rule [of the Bankruptcy Act] does not in a no-asset case any more deny a discharge to one who has failed to schedule for reasons of honest mistake, not 'fraud or intentional design.' This would be an inequitable result, in the absence of prejudice." *Samuel v. Baitcher (In re Baitcher)*, 781 F.2d 1529, 1534 (11th Cir.1986). Although the facts in *Baitcher* were different than in this case, the approach of the Eleventh Circuit when considering this area of the Bankruptcy laws is well-stated.

4. To conclude that a creditor need show only a "colorable" claim of fraud would mean that the Court would have to disregard to some extent a debtor's defenses or explanations. This would be difficult to evaluate and could result in a grossly unfair outcome. Requiring that fraud be shown by a preponderance of the evidence is certainly a reasonable way to evaluate whether or not a debt has been obtained by fraudulent means, and does not place an undue burden on a creditor.

Accordingly, the Court concludes that there is no substantial prejudice to First American that will result from granting the relief requested by the Debtor.

This case does not involve a situation in which a debtor failed to include a particular creditor on his schedule of liabilities, and as a result of the debtor's failure, the creditor did not receive notice of the bankruptcy case and applicable deadlines. On the contrary, the Debtor in this case listed First American Holding as a creditor on his original schedules filed on April 25, 2002.

Another issue arises in this case, however, because the schedules were not filed by the Debtor until after the Clerk of the Bankruptcy Court had served the "Notice of Chapter 7 Bankruptcy Case." Consequently, the creditors listed on the schedules were never served with the Notice, apparently because of uncertainty as to whether the Clerk should serve the Notice, or whether the Debtor should serve a copy of the Notice to all creditors not included on the original mailing list.

Several rules relate to the Notice that creditors are required to receive regarding the deadline to file dischargeability complaints. Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, for example, provides:

**Rule 4007. Determination of Dischargeability of a Debt**

.　.　.　.　.

**(c) TIME FOR FILING COMPLAINT UNDER § 523(c) IN A CHAPTER 7 LIQUIDATION, CHAPTER 11 REORGANIZATION, OR CHAPTER 12 FAMILY FARMER'S DEBT ADJUSTMENT CASE; NOTICE OF TIME FIXED.** A complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). *The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002.* On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired.

Fed.R.Bankr.P. 4007(c)(Emphasis supplied). Rule 2002(f) of the Federal Rules of Bankruptcy Procedure provides in part:

**Rule 2002. Notice to Creditors, Equity Security Holders, United States, and United States Trustee**

.　.　.　.　.

**(f) OTHER NOTICES.** Except as provided in subdivision (1) of this rule [relating to notice by publication], *the clerk, or some other person as the court may direct, shall give the debtor, all creditors, and indenture trustees notice by mail of:* ... (4) the time fixed for filing a complaint objecting to the debtor's discharge pursuant to § 727 of the Code as provided in Rule 4004; (5) the time fixed for filing a complaint to determine the dischargeability of a debt pursuant to § 523 of the Code as provided in Rule 4007.

Fed.R.Bankr.P.2002(f)(Emphasis supplied). Courts generally find that the combined effect of Rule 4007(c) and Rule 2002 is to mandate that creditors receive at least thirty days notice of the deadline for filing dischargeability complaints. See *In re Shaheen,* 174 B.R. 424, 427 (E.D.Va. 1994); and *In re Schwartz & Meyers,* 64 B.R. 948 (Bankr.S.D.N.Y.1986).

Courts are also inclined, however, to exercise their equitable powers to fashion an appropriate remedy when the failure to provide the required notice was not the clear fault of any party. *In re Anwiler,* 958 F.2d 925 (9th Cir.1992).

In this case, the attorney appearing at the hearing for the Debtor's counsel states that the Debtor's counsel expected the Clerk to notify the creditors of the deadline to file dischargeability complaints, since the creditors were listed on the Debtor's original Schedule of Liabilities filed with the Court, and the Schedules were filed prior to the § 341 meeting and more than two months prior to the deadline. See, for example, Rule 4007(c) and Rule 2002(f), which provide that the "the court" or "the clerk" shall give notice of the deadline to file dischargeability complaints.

It is also reasonable to contend, however, that the Schedules the Debtor finally filed should have been treated as an Amendment to his Bankruptcy Schedules, since no list of creditors was filed with the petition, the Schedules were not filed timely, and the Schedules were filed after the Clerk had already served the Notice of Chapter 7 Bankruptcy Case. If treated as an Amendment, it is reasonable to conclude that the Debtor should have served the Notice on all creditors who were not listed on the original mailing list. See, for example, Rule 1009–1 of the Local Rules of the United States Bankruptcy Court for the Middle District of Florida, which provides that a *debtor* shall notify creditors of

any amendment to a list or schedule that affects those creditors.

It appears that the Federal Rules of Bankruptcy Procedure do not specifically address the situation found in this case. Clearly the creditors scheduled by the Debtor were not notified of the deadline for filing dischargeability complaints.

Based on the circumstances presented, however, the Court determines that the failure was not a culpable omission by the Debtor. The record does not establish that the Debtor deliberately omitted certain creditors from his schedules, or that he delayed the filing of his schedules for an improper tactical purpose. The attorney appearing at the hearing represents that the Debtor's counsel believed that the Clerk would notify creditors of the deadlines. The schedules were filed prior to the scheduled § 341 meeting, and more than two months before the deadline for filing dischargeability complaints set by the Court.

Under these circumstances, the Court finds that the Debtor's Motion should be granted, and that the relief requested by the Debtor should be approved.

Accordingly:

**IT IS ORDERED** that:

1. The Motion to Reschedule 341 Creditors Meeting and to Reset Necessary Deadlines filed by the Debtor, Michael Clark Cameron, is granted.

2. The Clerk of the Bankruptcy Court is directed to serve an Amended Notice of Chapter 7 Bankruptcy Case in this case, which notifies all creditors of a rescheduled § 341 meeting and an extended deadline for filing complaints objecting to the Debtor's discharge or to the dischargeability of a particular debt.